UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MOTORCARS ACQUISITION, LLC dba MERCEDES-BENZ OF BEDFORD, | ) ) ) | Case No. 1:09 CV 62 |
| Plaintiff, | ) ) | Judge Dan Aaron Polster |
| vs. | ) ) ) | MEMORANDUM OF OPINION AND ORDER |
| M1 MOTORS, INC., dba MERCEDES-BENZ OF NORTH OLMSTED, et al., | ) ) ) ) | |
| Defendants. | ) | |

On July 15, 2009, following extensive mediation efforts by the Court, the parties agreed to a resolution of this case through a Consent Judgment Entry. This Order provided injunctive relief to Plaintiff Mercedes-Benz of Bedford ("MBB") against defendants Mercedes-Benz of North Olmsted ("MBNO") and Peter Mapp regarding some of the allegations in the Complaint, and also provided injunctive relief to MBNO regarding some of the allegations in the Counterclaim against MBB. No money changed hands in connection with the settlement.

Paragraph 7 of the Consent Judgment Entry provides that MBB and MBNO would submit the issue of reasonable attorneys fees and costs to the Court for a binding, non-appealable decision. Pursuant to Paragraph 7, MBB submitted a petition requesting fees of

-1-

$178,784.96 and costs of $4,098.88, and MBNO submitted a petition requesting fees of $25,007.50 and costs of $236.00. Each side responded to the other's fee petition, and the matter is now before the Court.

MBB filed the Complaint after learning that Peter Mapp, a former employee of MBB who had gone to work for MBNO, had used a password that he obtained while employed at MBB to access the MB Advantage website to obtain information concerning customers of MBB. MBB believed that this unauthorized use had caused significant economic damage and would lead to further economic damage in the future. Mapp and MBNO asserted that the conduct had not led to a single Mercedes-Benz customer being "taken" from MBB by MBNO, and that such conduct would not have any future impact. MBB spent a great deal of time and money in an ultimately unsuccessful effort to show that Mapp's conduct had caused any commercial harm. While virtually all of the parties' time was spent on this area, a small amount of time was spent investigating the allegations in MBNO's counterclaim that MBB had engaged in unfair and/or deceptive advertising.

When the subject of attorneys fees came up during the mediation, MBB said that the attorneys fees incurred pursuing its claims were in the $100,000–125,000 range, while MBNO asserted that the attorneys fees spent pursuing its counterclaims were in the $10,000-$20,000 range. Accordingly, paragraph 7 of the Consent Judgment Entry was worded that MBNO's fees and costs would be deemed an offset to MBB's fees and costs.

What jumps out to the Court, and what MBB and MBNO should be painfully aware, is that the two companies have spent hundreds of thousands of dollars fighting over conduct that had no economic impact whatsoever. If MBB and MBNO each spent an equivalent

amount defending their claims, they would have spent approximately $400,000 litigating this case.  Peter Mapp and David Klausner should not have utilized any confidential or proprietary information obtained from their former employers in any way, and certainly not to solicit customers, and it was not a good idea for MBB to use in its advertisements someone with the same last name (Moreno) as the President of MBNO.   But none of this conduct had any impact on the sales of Mercedes-Benz automobiles to anyone, and all the time and money spent in this litigation could certainly have been better spent trying to sell automobiles during the worst climate for the automobile industry in at least 50 years.

Each company has spent many pages attacking the fee petition of the other company.  MBB's fee petition seeks an amount grossly in excess of what it estimated in July.  Some, but by no means all, of the difference can be explained by the substantial amount included for the preparation of the fee petition, and the $20,000 added for the anticipated response to MBNO's fee petition (see paragraph 20 of Mr. Wuliger's affidavit), which is far in excess of what it must have cost to prepare its 10-page response.  It is the Court's considered judgment that MBB should have realized much sooner that it had suffered no adverse economic impact from Mr. Mapp's conduct.  The Court notes that MBNO's fee petition also substantially exceeds what it estimated in July.

Acordingly, the Court is subtracting the $20,000 which MBB has added for its fee petition response, leaving $162,884 in attorneys fees and $4099 in costs.  The Court is then reducing the attorneys fees by 50%, resulting in $81,442 in attorneys fees and $4099 in costs, for a total of $85,541.   This is also much closer to the figure provided in July.  Correspondingly, the Court is  reducing MBNO's fee request from $25,000 to $15,000, which is the midpoint of the

-3-

$10-20,000 figure provided in July. With the $236 requested in costs, this gives a total of $15,236. This seems like an ample amount, given how little attention was devoted to MBNO's counterclaims in the context of the entire litigation. As the Consent Judgment Entry provides that any amount awarded MBNO be deemed an offset to the amount awarded to MBB, MBNO is to pay MBB the sum of $70,305. The Court directs that this amount be paid no later than September 30, 2009.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster     September 15, 2009*
**Dan Aaron Polster
United States District Judge**